WESTERN NEW YORK WATER COMPANY, Respondent, *v.* CITY OF BUFFALO et al., Appellants.

Taxpayer's action — Buffalo (city of) — municipal corporations — water works — nature and purpose of taxpayer's action — act complained of must be injurious as well as illegal — judgment, in taxpayer's action, restraining city from delivering water for use outside its limits cannot be upheld in absence of findings that such delivery was detrimental to interest of municipality, the public or the taxpayer.

1. The nature and purpose of a taxpayer's action presume that there will be more than illegality in order to enable him to intervene. The basic theory of such an action is that the illegal action is in some

way injurious to municipal and public interests and that if permitted
to continue it will in some manner result in increased burdens upon
and dangers and disadvantages to the municipality and to the
interests represented by it and so to those who are taxpayers. It
is not the intention of the statute that a taxpayer shall be allowed
to intervene and bring to the decision of the courts every act of a
municipal officer which may be claimed to be illegal although con-
cededly it is entirely innocuous.

2. The city of Buffalo contracted to deliver a large amount of
water to one of the defendants on a parcel of land located within
the city, which supply was then by an extension of the pipes con-
ducted to an outside parcel. Assuming this to be illegal, a taxpayer's
action to restrain delivery of such water cannot nevertheless be
successfully maintained in the absence of evidence warranting findings
of possible detriment to the interests of the municipality, the public
or the taxpayer, and where in such an action, findings, unanimously
affirmed, and, therefore, controlling upon this court, fail to disclose
waste or injury to any property, funds or estate of the municipality,
a judgment in favor of plaintiff must be reversed. (*Altschul* v.
*Ludwig*, 216 N. Y. 459, followed; *Simson* v. *Parker*, 190 N. Y. 19,
distinguished.)

*Western N. Y. Water Co.* v. *City of Buffalo*, 213 App. Div. 458,
reversed.

(Argued January 14, 1926; decided February 24, 1926.)

APPEAL, by permission, from a judgment of the Appel-
late Division of the Supreme Court in the fourth judicial
department, entered July 21, 1925, unanimously affirming
a judgment in favor of plaintiff entered upon a decision
of the court on trial at Special Term.

*Frederick C. Rupp, Corporation Counsel (Frank C.
Westphal* of counsel), for City of Buffalo et al., appellants.
The city of Buffalo has the legal right to supply water
for industrial purposes to the Iroquois Gas Corporation.
(*City of Little Falls* v. *State of New York*, 198 App. Div.
488; Dillon on Mun. Corp. [5th ed.] §§ 1317, 1322;
*Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 396; *People* v.
*Manhattan Gas Light Co.*, 45 Barb. 136; *Armour Packing
Co.* v. *Edison Elec. Ill. Co.*, 115 App. Div. 51; *Milwaukee*
v. *Zoehrlant Leather Co.*, 114 Wis. 276; *Bates* v. *Bassett,*

60 Vt. 530; *Daggett* v. *Colgan*, 92 Cal. 53; *Henderson* v. *Young*, 119 Ky. 224; *City of Lawrence* v. *Methuen*, 166 Mass. 206.) The plaintiff having failed to prove waste or fraud, cannot maintain this action, and the complaint should have been dismissed. (*Altschul* v. *Ludwig*, 216 N. Y. 459; *Rogers* v. *O'Brien*, 153 N. Y. 357.)

*William S. Rann* for Iroquois Gas Corporation et al., respondents. There is no proof of waste or injury to the property, estate or funds of the city of Buffalo. There is not a shred of evidence of fraud or bad faith or wrongful or dishonest official action. There is thus left for decision only the narrow question whether the acts of the defendants complained of were or are without power. (*Bush* v. *Coler*, 60 App. Div. 47; *Bush* v. *Coler*, 60 App. Div. 56; 170 N. Y. 587; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377; *Hopper* v. *Willcox*, 155 App. Div. 213.)

*Preston M. Albro* for respondent. The sale of water by the defendant city for use without the city is illegal. (*City of Paris* v. *Sturgeon*, 50 Tex. Civ. App. 519; *Farwell* v. *Seattle*, 43 Wash. 141; *Mayor, etc., of Gainesville* v. *Dunlop*, 147 Ga. 345; *Stauffer* v. *East Stroudsburg Borough*, 215 Penn. St. 143.)

HISCOCK, Ch. J. This action is brought by plaintiff as a taxpayer of the city of Buffalo under the provisions of section 51 of the General Municipal Law to restrain that municipality from selling water to the defendants, Iroquois Natural Gas Corporation and Isbell-Porter Company. It is also the holder of a bond issued by the municipality to raise funds for the purpose of extending the supply of water to the city and its inhabitants. The findings, which have been unanimously affirmed and which, therefore, are controlling upon us, disclose the following facts:

The plaintiff is engaged in the business of selling water

and is a taxpayer of the city of Buffalo. The Gas Corporation is a public service corporation originally engaged in producing natural gas, almost all of which was supplied to the city of Buffalo and its residents. Some time since it was required by the Public Service Commission to manufacture gas which could be added to the natural supply and thereby a sufficient amount of gas insured for the use of the municipality and its inhabitants. For the purpose of carrying out this requirement it purchased a considerable tract of land just outside of the municipality and also a small parcel which was located within the boundaries of the city. While it may be inferred that the location of the greater parcel of this land outside of the municipality was for the purpose amongst other things of securing lower taxation it also appears that it was advantageous in its proximity to railroad facilities. The Gas Corporation through the Isbell-Porter Company as contractor commenced the erection of a large factory upon the parcel outside of the city and in connection with the erection and use of this factory it arranged with the city of Buffalo to deliver a large amount of water to it on the parcel located within the city and which supply was then by an extension of pipes conducted to the outside parcel. While this extension of mains and water supply was made without the consent of the deputy water commissioner as required by the ordinances of the city, it involved no feature of concealment but apparently was in pursuance of a perfectly well-defined plan on the part of the municipality to sell and deliver water for use by these defendant corporations outside the city limits.

The city of Buffalo pumps its water from Lake Erie and there is no finding that it is supplying water to defendants at less than cost, that such sale impairs in any way its capacity to furnish an adequate supply for municipal purposes and to its inhabitants or that the supply to these defendants is part of a general plan

[242 N. Y. 202]     Opinion, per Hiscock, Ch. J.     [Feb.

upon which the city has embarked of selling water to persons outside its boundaries under such circumstances as might constitute a speculative enterprise liable to be productive of injury to the city and its taxpayers. On the contrary, it has been found " that there is no proof * * * that the conduct of the defendant city of Buffalo, in supplying water to the defendant Iroquois Gas Corporation, and delivering it to said Iroquois Gas Corporation's land within the city of Buffalo; or that the conduct of the said Iroquois Gas Corporation in receiving said water upon its said land within said city, and conducting it to its said plant in the town of West Seneca, and using it there, results or has resulted in any waste of or injury to the property, estate or funds of said city of Buffalo."

The question is the one whether, on these facts, the plaintiff can maintain this action as a taxpayer, for I do not see that its position is strengthened any by its ownership of the bond referred to.

We shall assume, without deciding, that it is illegal for the city of Buffalo to deliver water to the Gas Corporation within the city with the knowledge and intention that it will and shall be then conducted by said Gas Corporation to its premises outside the city for use thereon. But the fact that the municipality is thus engaged in effect in selling and delivering water to a corporation outside of the city and that this act may be illegal is not in our opinion enough to enable plaintiff to maintain this action. Under the provisions of the Municipal Law the action may be maintained for the purpose of preventing any illegal act or for preventing waste or injury to any property, funds or estate of the municipality. As we have pointed out, there are no findings which support it upon the latter ground and the plaintiff must rely upon the first ground of illegality.

Mere illegality is not enough. The very nature and purpose of a taxpayer's action like the present one presume

that there will be more than illegality in order to enable him to intervene. The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests and that if permitted to continue it will in some manner result in increased burdens upon and dangers and disadvantages to the municipality and to the interests represented by it and so to those who are taxpayers. It was not the intention of the statute that a taxpayer shall be allowed to intervene and bring to the decision of the courts every act of a municipal officer which may be claimed to be illegal although concededly it is entirely innocuous. There are other penalties than a taxpayer's action for those municipal officers who disregard their responsibilities and transgress their limitations. This rule limiting such a right of action is firmly established and was so recently and fully stated by this court in the case of *Altschul* v. *Ludwig* (216 N. Y. 459) that it seems unnecessary to repeat or attempt to amplify it at any great length. It was there said: " The mere illegality of the official act in and of itself does not justify injunctive relief at the request of the taxpayer. To be entitled to this relief, when waste or injury is not involved, it must appear that in addition to being an illegal official act the threatened act is such as to imperil the public interests or calculated to work public injury or produce some public mischief." The difference between that case and this significantly illustrates the limitations upon this kind of an action. There the action was upheld because there was danger that the proposed illegal acts of the officials would result in the erection of a theatre not properly safeguarded against fire risks and with the resulting possibility that there might be a lamentable destruction of human life. In this case nothing of that kind appears; there is no suggestion in the findings of possible detriment to the interests of the municipality, the public or the taxpayer.

The case of *Simson* v. *Parker* (190 N. Y. 19), relied on

by respondent, is not at all in conflict with the preceding case; in fact it emphasizes the conditions under which such an action as the present one may be maintained by a taxpayer.  In that case it appeared that the city being authorized to sell water to corporations or individuals outside of the city, provided such sale would not impair the supply for the city and its inhabitants, made a contract for a long term of years to furnish a fixed quantity of water to a manufacturing concern with the provision that in case it did not deliver the water it should be liable for damages.  It is easy to see that the court was entirely justified in holding that a taxpayer's action could be maintained to restrain such a contract on the part of the city within the principles of the *Altschul* case. The contract was not only illegal but it furnished the possibility of injury to the city and to its taxpayers either through impairment of the supply of water necessary for them or through a liability for damages in case the contract was not complied with.

The judgments appealed from should be reversed and the complaint dismissed, with costs in all courts.

CARDOZO, POUND, MCLAUGHLIN, CRANE and LEHMAN, JJ., concur; ANDREWS, J., dissents.

Judgments reversed, etc.